PHINIZY et al. v. AUGUSTA & K. R. CO. et al. CENTRAL TRUST CO.
OF NEW YORK v. PORT ROYAL & W. C. RY. CO.

Ex parte COMER et al.

(Circuit Court, D. South Carolina. August 18, 1894.)

1. RECEIVERS—EXPENSE OF OPERATING BRANCH OF CONSOLIDATED ROAD.

Where a railroad company manages and controls another as part of its system, not through any contractual relation, but solely by virtue of its control of the voting power of the latter, which it absorbs by virtue of such power, and the latter is operated, not in the interest of its stockholders and creditors, but for the former's benefit, a receiver into whose hands both roads have passed, the latter as a part of the former, by virtue of such absorption, cannot recover from the latter expenses incurred in operating it.

2. SAME—IMPROVEMENTS.

Where, however, the receiver incurs expense in making the roadbed of a branch of the subordinate railroad company secure, such expense becomes a charge on the entire road of such company, for which the receiver is entitled to reimbursement.

3. SAME—IMPROVEMENTS—SUBORDINATION TO LIEN OF MORTGAGE.

There being a mortgage on the branch thus improved, the receiver's right to reimbursement is subordinate to the lien of the mortgage.

4. SAME—INTEREST ON MORTGAGE BONDS.

As the roads forming the subordinate company, on consolidation, took and held such branch subject to the mortgage, and by statute (Gen. St. S. C. § 1428) assumed liability for the debt, the receiver's claim for interest paid on such mortgage bonds is subordinate to the lien of the mortgage.

Petition of H. M. Comer and R. Somers Hayes, receivers of the Central Railroad & Banking Company of Georgia, for allowance of certain expenditures.

Lawton & Cunningham and Mitchell & Smith, for petitioners.

W. K. Miller, W. G. Charlton, Charles H. Phinizy, N. B. Dial, and J. R. Lamar, for respondents.

SIMONTON, Circuit Judge. These cases now come up upon a petition of Comer and Hayes, receivers of the Central Railroad & Banking Company of Georgia, setting up certain claims against the Port Royal & Western Carolina Railway Company, for balances due on operating expenses while the said road was in the hands of H. M. Comer, receiver, $129,225.31, and for the value of certain steel rails laid during the same period on the Augusta & Knoxville Railroad, a part of its system, $40,084.52 and for interest paid on the first-mortgage bonds of the Augusta & Knoxville Railroad Company, $22,277.50, and praying that receivers' certificates may be issued for the total amount claimed to be thus due. The Port Royal & Western Carolina Railway Company is made up of several roads. Among them, and the principal part, is the Augusta & Knoxville Railroad. Upon this road is a first mortgage, securing a number of bonds. Upon the whole system of the Port Royal & Western Carolina Railway is a mortgage, subordinate to this first mortgage on the Augusta & Knoxville Railroad, at least over the property of this last-named road. The certificates asked for would be prior in lien to both mortgages. The Central Railroad & Banking Company of Georgia, for which the petitioners are receivers, was a large and

powerful combination of railroads, forming a complete system, under one controlling management, all the component parts of which were made contributory to the Central Railroad of Georgia, having its ocean terminus at Savannah. This great combination had obtained and exercised complete control over the Port Royal & Western Carolina Railway, and had made it an integral part of its system, —one of the feeders of the stem. This control was secured, not by any lease or contract, nor by ownership of the property, but by means of the voting power in the corporation, through holdings of stock and bonds which had a voice in its management. The officers and agents of the Port Royal & Western Carolina Railway Company were virtually appointed by the Central. Its financial arrangements were made by the Central. Its traffic rates were adopted by agents of the Central. All of its funds were received by the Central. In fact, it was dominated, treated, and managed as a subdivision of the Central. In the course of railway manipulation, the Central Railroad & Banking Company of Georgia had itself, with every part of its great system, come under the control of the Richmond & Danville Railroad Company, by virtue of a lease; and, in its turn, it was managed as a part of the system of the lessee. In March, 1892, a bill was filed in the circuit court of the United States for the southern district of Georgia, in the name of Rowena Clark et al. against the Central Railroad & Banking Company of Georgia et al.; and, as a result of this bill, the domination of the Richmond & Danville Railroad Company was ended. Subsequently, on 4th July, 1892, upon a bill filed by the Central Railroad & Banking Company, in the same court, against the Farmers' Loan & Trust Company et al., the complainant road was placed in the hands of receivers, and finally of one receiver, H. M. Comer. The prayer and purpose of that bill were that a receiver should be appointed to take charge of and to operate the whole system of the Central Railroad & Banking Company, with its auxiliary, owned and controlled, corporations and properties of every description; among them by name, the Port Royal & Western Carolina Railway Company. As we have seen, H. M. Comer was appointed such receiver. The declared object of this appointment, made at the instance of the insolvent corporation (complainant), was the maintenance, preservation, and protection of the entire system, in all its parts, conducted by the Central Railroad & Banking Company, and the prevention of its disintegration; in other words, the preservation and security of the object for which the great system was created. H. M. Comer, having thus been appointed receiver, under these circumstances and for these purposes, entered into the possession and control, as such receiver, of the whole system, or such parts thereof as were within the jurisdiction of the court appointing him. The Port Royal & Western Carolina Railway was a corporation both of Georgia and South Carolina, and by far the largest part of its property was in the latter state. Auxiliary proceedings were instituted in this district under the same name and to the same effect as the Georgia suit, and under them the appointment of H. M. Comer as receiver, to the same intents and purposes, was recognized and confirmed in this district; and under this order

Comer entered into possession and control of the Port Royal & Western Carolina Railway in this district, as a part of the system. As such receiver,—that is, as receiver for the whole system of the Central Railroad & Banking Company,—he operated the road in question from the 20th day of July, 1892, to 4th June, 1893. On this last-named day he was removed as such receiver, and the whole of the Port Royal & Western Carolina Railway Company was placed in the hands of John B. Cleveland, appointed as receiver in proceedings instituted by Phinizy and another trustee of the first mortgage of the Augusta & Knoxville Railroad Company, praying foreclosure of this mortgage, and also in proceedings instituted by Central Trust Company of New York against the Port Royal & Western Carolina Railway Company. During the period of his receivership, H. M. Comer had operated this Port Royal road as a part of his system, and its operations were unprofitable. He had also paid interest at one time on bonds of the Augusta & Knoxville Railroad Company. He had also placed on the tract of this last-named road secondhand steel rails, under these circumstances: New steel rails were needed for the Central Railroad,—the main stem of the system,—and they were furnished. The old rails replaced by them were put down on the Augusta & Savannah Branch of the Central, and the steel rails for which these were substituted were put on the Augusta & Knoxville Railroad. The iron rails of this latter road, taken up to be replaced by the steel rails, were put on the Port Royal & Augusta Railroad, another part of the great system, under the control of the same receiver. All the moneys needed for the operating expenses and the interest and the rails were furnished by H. M. Comer, receiver of the Central Railroad & Banking Company; that is, by himself to himself. Mr. Hayes having been appointed to assist him as coreceiver, the account now in question is presented in their joint names. This is proper. The receivership is continuous, and is analogous to a corporation sole. The claim belongs to the receivership, not to the person of the receiver. McNulta *v.* Lochridge, 141 U. S. 331, 12 Sup. Ct. 11. If any claim exists in behalf of the Central Railroad & Banking Company for advances or improvements made anterior to the appointment of any receiver, it could be presented and prosecuted by them. Oil Co. *v.* Wilson, 142 U. S. 325, 12 Sup. Ct. 235. No such claim has been presented, nor does it appear that any such claim exists. The question before us naturally divides itself into three heads:

## Amount Due for Operating Expenses.

The Port Royal & Western Carolina Railway Company, as has been seen, was controlled and managed by the Central Railroad & Banking Company of Georgia, as a part of—a subdivision of—its whole system, under no contractual relation, but solely by virtue of its control of the voting power in the first-named corporation. By virtue of this power, it absorbed it into its system; and, by reason of this absorption, it was included among the corporations placed in the hands of Comer as receiver. As has been seen, this appointment was made for the purpose of preserving and protecting the

integrity of the system, maintaining its status quo, and was made at the suit of the Central. So Comer, the receiver, occupied to this controlled road precisely the same relations which the Central Railroad & Banking Company had done, controlling it through and because of the voting power, and using it through that control. When, therefore, the receivers present this account for operating expenses, they can rely for reimbursement on no express contract, but must seek it ex equo et bono on some contract which the law, or principles of equity, would imply. This subordinate road was conducted as a part of a great system,—a system conceived and created by the Central Railroad & Banking Company, for its benefit solely. Every part of the system contributed to the good of its creator, and to this end the interest of the Central, and not of the feeders, was the dominating idea. The advantages derived by the Central from the operation of the other parts of the system were vastly disproportionate to those derived by the contributing roads. It poured into its channel all the freight coming from or going to these subordinate roads. It gave to the Central a potent influence in its contracts with rival systems, and in its negotiations with connecting lines. It furnished constant and profitable use of its plant and capital. It added to and sustained its credit at all financial centers. By the increase of the volume of business on the main line, it could make the most attractive offers to the agricultural and business community. In short, under the complete domination of this majority vote, the subordinate road was conducted, not with a view to the interest of its stockholders and creditors, but for the benefit of the central figure of the system. No implied contract, therefore, could arise on the part of the subordinate corporation to reimburse the controlling corporation for expenses incurred in operating it. The profit of the adventure inured to the Central. This profit could not be measured by a money balance. The benefits sought were wholly for the Central. "Qui sentit commodum sentire debet et onus," is the maxim of equity and good morals. As the Central Railroad & Banking Company could not have looked to or demanded from its controlled subordinate reimbursement for moneys advanced in operations conducted for the benefit of the Central, so the receiver appointed to take the place of the Central. to maintain the integrity of its system, to preserve, protect, and secure the status of this system, conceived and created for its benefit solely, is in the same plight as the Central, and must bear the loss of these operating expenses, whatever they may be.

### Rails Placed on Augusta & Knoxville Railroad.

This expenditure is on a different footing. The first duty of a railroad corporation enjoying its franchise is to the public. The roadbed must always be kept so that safety is secured, and expenditures for this purpose are looked upon with favor. The receiver is authorized, in his own discretion, to make expenditures. not of an extravagant character, to this end; and even in cases where perhaps he should have applied to the court in the first instance, but, in his own discretion, he has made expenditures, the

court will sanction them upon proper investigation. Cowdrey v. Railroad Co., 1 Woods, 336, Fed. Cas. No. 3,293. The present instance is a case of this character; and, as the expenditure would have been allowed if authority had been asked, it is now confirmed; but the charge will be upon the entire road of the Port Royal & Western Carolina Railway, and must be subordinate to the lien of the first mortgage on the Augusta & Knoxville Railroad, the trustees of this mortgage having no part or lot in the receivership.

### Interest on Bonds of Augusta & Knoxville Railroad Company.

This is a question of much difficulty. If the receivers, by virtue of this payment, can require its return in the shape of receivers' certificates, they would then be placed in a position superior to any bond or coupon holder of the company. The payment of the interest under these circumstances would work no advantage whatever to the first-mortgage bondholders, and there would be no equity for its reimbursement. On the other hand, the payment of these coupons prevented the foreclosure of the mortgage, and thereby prevented the disintegration of the system,—the object for which the receivership was created. When the roads now forming the Port Royal & Western Carolina Railway Company were consolidated, however, the consolidation held the part of their road formerly the Augusta & Knoxville Railroad subordinate to this first mortgage, and under the act of the legislature it assumed a liability for this debt. Gen. St. S. C. § 1428; Pub. Laws S. C. § 1539. The claim under consideration is admitted, ranking next after the sum necessary to satisfy the outstanding bonds and coupons secured by the first mortgage on the Augusta & Knoxville Railroad.

The prayer for receivers' certificates is refused. In the order for sale of the property, let provision be made for the sums allowed in accordance with this opinion.